Dean C. Waldt (029475)
Michael A. DiGiacomo (032251)
BALLARD SPAHR LLP
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
waldtd@ballardspahr.com
digiacomom@ballardspahr.com
Telephone: 602.798.5400
Facsimile: 602.798.5595

*Counsel for U.S. Bank National Association, as Trustee, successor-in-interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2005-PWR9, by and through its authorized special servicer, C-III Asset Management LLC, a Delaware limited liability company*

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>TUCSON ONE, LLC,<br><br>Debtor. | Chapter 11 Proceedings<br><br>Case No. 4:17-bk-11219-BMW<br><br>**U.S. BANK AS TRUSTEE'S MOTION FOR RELIEF FROM STAY** |

U.S. Bank National Association, as Trustee, successor-in-interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2005-PWR9, by and through its authorized special servicer, C-III Asset Management LLC, a Delaware limited liability company, in its capacity as special servicer (the "Lender"), moves the Court (the "Motion") for entry of an order terminating the automatic stay under Sections

362(d)(1), (d)(2) and (d)(3),[1] Bankruptcy Rule 4001,[2] and Local Rule 4001-1,[3] so that Lender can pursue its contractual and state law rights with respect to commercial property located at 3700 E. Ft. Lowell Road, Tucson, Arizona, 85716 (the "Property).

This motion is supported by the following Memorandum of Points and Authorities, the exhibits referenced herein, the entire record before the Court in this chapter 11 case, and any argument presented to this Court at the time of the hearing on the Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. JURISDICTION AND VENUE

This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory bases for the relief requested are 11 U.S.C. §§ 105, 361, and 362(d).

### II. PRELIMINARY STATEMENT

This case was filed as, and continues to be, a litigation tactic to prevent Lender from foreclosing on the Property securing its Loan Documents (as defined below). Tucson One cannot provide adequate protection of Lender's interest in the Property, Tucson One's sole asset. Tucson One has no equity in the Property. Tucson One has no ongoing business, no employees, no income, and extremely limited ability to reorganize. Under these circumstances, relief from the automatic stay is required.

Upon the filing of this bankruptcy case, Tucson One prevented Lender from carrying out the already noticed trustee sale of the Property. Lender noticed the trustee sale of the Property after Tucson One failed to make payments under the Loan Documents (as defined below) and at a time when the value of the property was less than 50% of the total amount then due to Lender from Tucson One. Since Tucson One

---

[1] References to "**Section**" refer to a section of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**").
[2] References to "**Bankruptcy Rule**" refer to a rule of the Federal Rules of Bankruptcy Procedure.
[3] References to "**Local Rule**" refer to a rule of the Local Rules of Bankruptcy Procedure for the District of Arizona.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

DMWEST #17556129 v2

1 initiated this bankruptcy case, the value of the Property has continued to decrease, thus
2 eroding Lender's security interest, and Tucson One has failed to pay real property taxes
3 for the Property as they come due, further imperiling Lender's security interest. Tucson
4 One has failed to find a tenant to occupy the Property and, as a result, Tucson One has no
5 income and is unable to make adequate protection payments to Lender. Lender is thus
6 entitled to relief from the automatic stay.

**III.  FACTUAL BACKGROUND**

    **A.  Lender's Interest in the Property**

1. In 2005, Principal Commercial Funding, LLC made a loan to Tucson One, LLC ("Tucson One" or "Debtor") in the original principal amount of $2,469,500.00.

2. The Loan is evidenced by the Secured Promissory Note dated June 21, 2005 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit 1**.

3. Repayment of the Note is secured by various documents, including, but not limited to the liens, security interests, terms, and provisions contained within that certain Deed of Trust, Security Agreement and Assignment of Rents and Fixture Filing dated as of June 21, 2005 (the "Deed of Trust"), executed and delivered by Tucson One to the First American Title Insurance Company, as Trustee, for the benefit of Principal Commercial Funding, LLC. A true and correct copy of the Deed of Trust is attached hereto as **Exhibit 2**.

4. The Deed of Trust, among other things, encumbers the Property and the proceeds, rents, and leases received from the Property (the "Collateral").

5. The terms of the Note have been modified twice since its execution. Both modifications, first in December of 2010 and again in May of 2015, extended the term of the Note.

6. The Note and Deed of Trust were assigned by Principal Commercial Funding, LLC to LaSalle Bank National Association, as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2005-PWR9, and then ultimately assigned by Bank of

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

America, National Association, as Trustee, as successor by merger to LaSalle Bank National Association, as Trustee, the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2005-PWR9 to Lender.

7. Lender is the current owner, holder, and beneficiary of and under the Loan, the Note, the Deed of Trust, and all other documents evidencing or securing the Loan (hereinafter referred to either individually or collectively as the "Loan Documents").

### B. The Property's Fall Into Disrepair

8. Tucson One initially leased the Property to California Design Center, a furniture retailer.

9. In 2011, California Design Center vacated the Property and Tucson One began leasing the Property to Circus Furniture, a discount furniture retailer.

10. Circus Furniture filed a petition for relief under chapter 11 of the Bankruptcy Code on October 16, 2015. Circus Furniture, as part of its approved plan of reorganization, held a liquidation sale and vacated the Property on August 1, 2016.

11. Since Circus Furniture vacated the Property, the Property has remained vacant and suffered from break-ins, squatting, and vandalism.

12. Tucson One has no current rental income, indeed it has not had any rental income since August of 2016, at which time it was only receiving partial rent payments from Circus Furniture while Circus Furniture operated as a debtor in possession. *See* Disclosure Statement at 12-13.

### C. The Bankruptcy Case

13. Beginning in May of 2017, Tucson One failed to make monthly payments under the Note.

14. On or about May 25, 2017, Lender sent a Notice of Default and Acceleration (the "Notice of Default") to Tucson One demanding payment of amounts then due and owing under the Note within five days. A true and correct copy of the Notice of Default is attached hereto as **Exhibit 3**.

15. On or about June 27, 2017, after Tucson One's failure to cure the defaults listed in the Notice of Default, Lender recorded a notice of trustee sale (the "Notice of Sale"), scheduling a trustee sale for September 26, 2017.

16. On September 22, 2017 (the "Petition Date") Tucson One filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Petition") [Dkt. No. 1], staying the trustee sale scheduled for September 26, 2017, and initiating this bankruptcy case.

17. In the Petition, Tucson One identified its business as Single Asset Real Estate as defined in section 101(51B) of the Bankruptcy Code.

18. Since filing its petition, Tucson One has done little more to affect a reorganization than, in an apparent effort to forestall stay relief under 11 U.S.C. § 362(d)(3), file a placeholder plan and disclosure statement.

19. On December 21, 2017, exactly 90 days after the Petition Date, Tucson One filed its First Disclosure Statement Dated December 21, 2017 for its Plan of Reorganization Dated December 21, 2017 (the "Disclosure Statement") [Dkt. No. 31] and its Plan of Reorganization Dated December 21, 2017 (the "Plan") [Dkt. No. 32].

20. After Tucson One filed its Plan and Disclosure Statement, Lender engaged in settlement negotiations with Tucson One regarding a potential discounted buyout of the Property by Tucson One. During these negotiations, Lender agreed to forebear taking any action in the bankruptcy case in an effort to recover the Property, including the filing of a stay relief motion.

21. In March of 2018, Tucson One indicated that it would not participate in further settlement discussions.

22. On March 21, 2018, Tucson One filed its *Notice of Lodging Form of Order Setting Hearing to Consider Approval of Disclosure Statement* [Dkt. No. 45, providing parties to the bankruptcy case notice that the Court will hold a hearing on the Disclosure Statement on May 24, 2018.

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

### D. The Property's Declining Value

23. Prior to the Petition Date, in May of 2017, Lender commissioned an appraisal by CBRE, Inc. (the "May 2017 Appraisal"). The appraised value of the Property as of May 3, 2017 was $1.3 million. A true and correct copy of the May 2017 Appraisal is attached hereto as **Exhibit 4**.

24. As of the Petition Date, Tucson One stated that the Property's value was $1.1 million. Dkt. No. 1 at. p. 5. A decrease of more than 15% from the May 2017 Appraisal.

25. Since the Petition Date, Tucson One has failed to pay the real property taxes on the Property such that, as of January 3, 2018, $28,868.49 is due in delinquent real property taxes. A true and correct copy of a Real Property Tax Inquiry for the Property, dated January 4, 2018, is attached hereto as **Exhibit 5**.

26. Pursuant to an appraisal commissioned by Lender and conducted by CBRE in late 2017 (the "December 2017 Appraisal"), the value of the Property as of December 21, 2017 is $1.08 million dollars. A true and correct copy of the December 2017 Appraisal is attached hereto as **Exhibit 6**.

27. In the six months between the petition date and the date of the December 2017 Appraisal, the value of the Property decreased by $220,000.

28. The Property's value has steadily decreased since the Petition Date.

29. As of the Petition Date, the total payout amount due under the Loan Documents is $2,666,462.91.

### IV. <u>LEGAL ARGUMENT</u>

The automatic stay affords a debtor a breathing spell from its creditors. However, this breathing spell is not without limits. Section 362(d) of the Bankruptcy Code sets forth several independent and alternative means for obtaining relief from the automatic stay, any one of which is grounds for relief from the automatic stay. *See Sun Valley Ranches, Inc. v. The Equitable Life Assurance Soc'y of the U.S.* (*In re Sun Valley Ranches, Inc.*), 823 F.2d 1373, 1376 (9th Cir. 1987) (explaining that stay relief may be

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

1 granted if any one provision of Section 362(d) applies). As set forth below, Lender is
2 entitled to immediate relief from the automatic stay under Sections 362(d)(1), (d)(2) and
3 (d)(3).

**A. Lender is Entitled to Stay Relief For "Cause" Under 11 U.S.C. § 362(d)(1)**

Under Section 362(d)(1), "the court shall grant relief from the stay . . .for cause, including the lack of adequate protection of an interest in property . . . .". "Cause" is not defined in the Bankruptcy Code, but is determined on a fact-intensive, case-by-case basis. *See Christensen v. Tucson Estates, Inc.* (*In re Tucson Estates, Inc.*), 912 F.2d 1162, 1166 (9th Cir. 1990) (explaining "cause" determined on case-by-case basis); *Beguelin v. Volcano Vision, Inc.* (*In re Beguelin*), 220 B.R. 94, 98 (B.A.P. 9th Cir. 1998) (finding bankruptcy court has discretion to lift automatic stay); *Scripps GSB I, LLC v. A Partners, LLC* (*In re A Partners, LLC*), 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006) (factors include bad faith of the debtor and injury to movant). "'Cause' is an intentionally broad and flexible concept that permits the Bankruptcy Court, as a court of equity, to respond to inherently fact-sensitive situations." *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995). Though the Code does not define adequate protection, section 361 gives three non-exclusive examples. *Pistole v. Mellor (In re Mellor)*, 734 F.2d 1396, 1400 (9th Cir. 1984). In addition to periodic cash payments equivalent to decrease in value; additional or replacement liens on other property; and other relief that provides the indubitable equivalent, an equity cushion is "the classic form of protection for a secured debt justifying the restraint of lien enforcement by a bankruptcy court." *Id.* When a movant demonstrates that debtor has no equity in the property, "adequate protection may not be inferred, for there is no equity cushion." *In re Sedona San Carlos Dev. Co.*, 59 B.R. 113, 114 (Bank. D. Ariz. 1986). The burden of proof with respect to whether cause exists under Section 362(d) rests squarely on the party opposing the relief. 11 U.S.C. § 362(g)(2).

Here, there can be no question that the value of the Property is progressively

Ballard Spahr LLP
1 East Washington Street
Suite 2300
Phoenix, AZ 85004-2555

decreasing and will likely continue to decrease. Tucson One scheduled the value of the Property at $1.1 million and the value of Lender's claim in the bankruptcy at $2.4 million. It is clear that Lender is significantly undersecured and that no equity in the Property exists.

Tucson One cannot adequately protect Lender's interest in the Property. Tucson One is a single asset real estate company that has proven its inability to (1) properly secure and maintain the Property; (2) timely pay real property taxes as they become due; or (3) find a suitable tenant to occupy the Property and pay rent so that Tucson One can make payments due under the Note. These failings have created a situation where Lender's security is eroding and Debtor is unable to provide any adequate protection.

Beyond its inability to preserve the value of the Property, Tucson One has no ability to make adequate protection payments to Lender. Indeed, on the Petition Date Debtor indicated that it had less than $500 in its bank account and had not generated any rental income from the Property since, at the latest, August of 2016. Since the Petition Date, Debtor has become further delinquent on the real property taxes due for the Property. As Debtor has not leased the Property, nor has it even found a potential tenant, its ability to pay future property taxes as they inevitably become due is highly unlikely. The combination of the growing delinquency of real property taxes and Tucson One's complete lack of income makes it nearly impossible to conceive of any scenario in which Tucson One could generate sufficient funds to make adequate protection payments to Lender.

**B.     Cause Exists to Lift the Automatic Stay Under 11 U.S.C. § 362(d)(2)**

In the alternative, Lender should be granted relief under 11 U.S.C. § 362(d)(2). Section 362(d)(2) of the Bankruptcy Code requires stay relief if a debtor lacks equity in property and the property is not necessary for an effective reorganization. Once the movant establishes that the debtor lacks equity in the property, the burden shifts and the debtor must prove the property is "necessary for an effective reorganization." *See United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375 (1988)

(citing 11 U.S.C. § 362(g)).  "What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.*"  *Id.* at 375–76 (emphasis in original).  *See also United Savs. Assoc. of Texas v. Timbers of Inwood Forest Assocs., Ltd (In re Timbers of Inwood Forest Assocs., Ltd.)*, 808 F.2d 363, 370 nn. 12–13 (5th Cir. 1987) (Requiring more than a mere possibility that property would be needed in a proposed reorganization and collecting cases).

Tucson One lacks equity in the Property.  Further, it is obvious there can be no equity in a property with a value of $1.1 million that secures a debt in excess of $2.6 million.  Tucson One bears the burden of proving the Property is necessary for an effective reorganization that is in prospect.  However, it is clear there is no possibility of reorganization in this case.  With no assets, other than the fully encumbered Property, no ongoing business, and no income, Tucson One cannot propose a confirmable plan of reorganization.

### C. Cause Exists to Lift the Automatic Stay Under 11 U.S.C. § 362(d)(3)

To maintain the protections of the automatic stay in a single-asset real estate case, a debtor must, within the later of 90 days after commencement of the case, or 30 days of the court's determination that the case is a single-asset real estate case:  (a) file a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or (b) commence monthly-interest payments to its secured creditor in an amount equal to the non-default rate on the value of the assessment of the property to its secured creditor.  11 U.S.C. § 362(d)(3)(A)–(B).  Failure to comply with either sub-section should result in termination of the automatic stay.  *In re Leeward Subdivision Partners, LLC*, 2010 Bankr. LEXIS 5100, at *11–13 (B.A.P. 9th Cir. June 11, 2010) (If a single-asset real estate debtor cannot satisfy either subsection of section 362(d)(3) of the Bankruptcy Code, "it loses the protection of the § 362(a) stay and '[in] essence, the Chapter 11 case is over.'") (citations omitted).  Thus, the bankruptcy court must grant stay relief to a moving creditor if the single-asset real estate debtor fails to comply with § 362(d)(3).  *Id.*

(citing *In re CBJ Dev., Inc.*, 202 B.R. 467, 470 (B.A.P. 9th Cir. 1996)).

Here, Debtor has acknowledged, and it is abundantly apparent, that the chapter 11 case is a single-asset real estate case. Thus, to maintain the protections of the automatic stay, Debtor must satisfy either section 362(d)(3)(A) or (B) of the Bankruptcy Code. Debtor can make no such showing.

First, Debtor cannot satisfy section 362(d)(3)(B) of the Bankruptcy Code because it has never made ,much less offered to make, non-default interest payments to Lender. Second, although Debtor filed its Plan and Disclosure statement exactly 90 days after the Petition Date, Debtor cannot satisfy section 362(d)(3)(A) because the Plan has no reasonable possibility of being confirmed. Since this case is well past the 90th day, it is now impossible for Debtors to cure this defect. The Bankruptcy Code does not contemplate that "a single asset real estate debtor may [] take an unlimited time in which to file a plan that 'has a reasonable possibility of being confirmed within a reasonable time.' Rather, it requires that a debtor file a potentially confirmable plan within 90 days of the petition date." *In re Olde Prairie Block Owner, LLC*, 467 B.R. 165, 168-69 (Bankr. N.D. Ill. 2012).

Here, the Debtor's Plan is based entirely on speculation and has no rational hope of confirmation. The Plan assumes that Debtor will receive financing, which it has not secured nor even begun to locate, that will allow Debtor to pay a $1.3 million[4] secured claim to Lender. Further, Debtor's Plan relies on the assumption that Debtor will secure a new tenant in the Property capable of paying rent in an amount sufficient for Debtor to pay Lender's secured claim. Similar to its assumption that it will obtain sufficient financing, Debtor provides no factual support that it has located a tenant, nor any evidence that it has even begun to search for a prospective tenant to occupy the Property. In short, Debtor filed a placeholder plan on December 21, 2017. The Debtor filed the placeholder Plan in order to meet the 90-day deadline contemplated under 11 U.S.C. § 362(d)(3). The Debtor's Plan is incapable of confirmation in a reasonable time and the

---

[4] Lender does not concede the value of its secured claim, which value is fully and fairly reflected in the Lender's proof of claim. *See* Claim No. 2-1.

Bankruptcy Code does not grant Debtor an unlimited time after filing its placeholder plan to file a plan that is actually capable of confirmation. Lender is entitled to stay relief under section 362(d)(3).

RESPECTFULLY SUBMITTED this 13th day of April, 2018.

BALLARD SPAHR LLP

By: */s/Michael A. DiGiacomo*
Dean C. Waldt
Michael A. DiGiacomo
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555

*Counsel for U.S. Bank National Association, as Trustee, successor-in-interest to Bank of America, National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for the registered holders of Bear Stearns Commercial Mortgage Securities, Inc., Commercial Mortgage Pass-Through Certificates, Series 2005-PWR9, by and through its authorized special servicer, C-III Asset Management LLC, a Delaware limited liability company*

COPY of the foregoing electronically filed
and transmitted via CM/ECF this same date
to all parties requesting notice in this case.

By: */s/ Tasha Hart*