**NEFF & BOYER, P.C.**
CAMP LOWELL CORPORATE CENTER
4568 E. CAMP LOWELL DRIVE
TUCSON, ARIZONA 85712
PHONE (520) 722-8030
FAX (520) 722-8032
JEFFREY M NEFF
**ARIZ. BAR #5603 PCC #41908**
jeff@nefflawaz.com
AMANDA C FIFE
**ARIZ BAR #29121 PCC #66443**
amanda@nefflawaz.com

Attorneys for Debtor

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | **CHAPTER 11 CASE** |
| TUCSON ONE, LLC | **Case No.: 4:17-bk-11219-BMW** |
| Debtor. | **DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION DATED JUNE 8, 2018** |

The Debtor and Debtor in Possession, TUCSON ONE, LLC, in the above-captioned Chapter 11 case (hereafter "the Debtor"), proposes the following First Amended Plan of Reorganization dated June 8, 2018 (hereafter "the Plan" or sometimes "the Debtor's Plan") pursuant to the provisions of Chapter 11 of the Bankruptcy Code. All creditors and other parties in interest are encouraged to consult the Disclosure Statement prepared by the Debtor, as approved by the Bankruptcy Court, before voting to accept or reject this Plan of Reorganization. The Disclosure Statement for the Debtor's Plan (hereafter "the Disclosure Statement") contains a discussion of the Debtor, its business operations and the disclosure of all other

information material to the approval of this Plan of Reorganization. No solicitation materials, other than the Disclosure Statement and related materials transmitted therewith as approved by the Bankruptcy Court, have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of this Plan of Reorganization.

## *ARTICLE I*

### *Definitions*

For purposes of this Plan, except as expressly provided otherwise or unless the context otherwise required, all of the following defined terms will have the following meanings. The terms defined below will be equally applicable to both singular and plural forms, and to the masculine, feminine, and neuter forms, of such defined terms.

1.1 "Administrative Claim" will refer to and mean every cost or expense of administration of the reorganization case allowed under Bankruptcy Code §503(b) and referred to in Bankruptcy Code §507(a)(1), including without limitation: (a) any actual and necessary expense of preserving the estate, including the fees and expenses of the Debtor and his counsel as approved the Bankruptcy Court; (b) all allowances, including professional fees and costs approved by the Bankruptcy Court; (c) any actual and necessary expenses incurred in the operation of the Debtor's business; and (d) all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United Stated Code.

1.2 "Allowed Claim" shall mean (a) a claim of a person which has been scheduled by the Debtor as undisputed, and as to which claim no objection has been made by any other person within the time allowed for the making of objections; (b) a

claim allowed by a final order; (c) a claim as to which a timely and proper proof of claim or application for payment has been filed, and as to which proof of claim or application for payment, no objection has been made within the time allowed for the making of objections; or (d) a claim allowed under the Plan, notwithstanding any objection filed thereto by an person. Interest accrued after the filing date of the Debtor's reorganization case shall not be a part of any allowed claim against such Debtor, except as required or permitted by law.

1.3 "Affiliate" shall mean any affiliate that is defined in §101(2) of the Bankruptcy Code.

1.4 "Allowed Amount" shall mean with respect to any allowed claim in a particular class under the Plan, the amount of such claims in such class.

1.5 "Allowed Interest" or "Allowed Equity Interest" shall mean (a) an equity interest in the Debtor held by a person as of the Effective Date, and as to which interest no objection has been made by any other person within the time allowed for the making of objections; (b) an interest allowed by a final order; (c) an interest as to which a timely and proper proof of claim or application for payment no objection has been made within the time allowed for the making of objections or (d) an interest allowed under the Plan, notwithstanding any objection filed thereto by any person.

1.6 "Assets" shall mean, with respect to the Debtor, all rights, causes of action, all of the right, title and interest in and to property (real or personal, tangible or intangible) or whatsoever type or nature, owned by such Debtor as of the Effective Date, together with assets subsequently acquired by such Debtor, and including, but not limited to, property as defined in Section 541 of the Bankruptcy Code (each identified

3

item of property being herein sometimes referred to as an asset).

1.7    "Ballot" will refer to and mean the ballot for accepting or rejecting the Plan which will be distributed to holders of claims and classes that are impaired under this Plan are entitled to vote on this Plan.

1.8    "Bankruptcy Code" will refer to and mean Title 11 of the United States Code 11 U.S.C. §101, et seq., as the same may be amended from time to time.

1.9    "Bankruptcy Court or Court" will refer to and mean the United States Bankruptcy Court for the District of Arizona, or such other court that exercises jurisdiction over all or part of the reorganization case, including the United States District Court for the District of Arizona, to the extent the reference of all or part of this reorganization case is withdrawn.

1.10    "Bankruptcy Rules" will refer to and mean the Federal Rules of Bankruptcy Procedure, as amended, promulgated under 28 U.S.C. §2075 and the local rules of the Court, as applicable from time to time during the reorganization case.

1.11    "Business Day" will refer to and mean any day other than a Saturday, Sunday, or federal holiday recognized by the Federal Courts for the District of Arizona, and Arizona State holidays recognized by the Federal Courts for the District of Arizona.

1.12    "Case" shall mean this Chapter 11 case commenced by the filing with the Court of a voluntary petition for relief under Chapter 11 of the Code by the Debtor.

1.13    "Cash" will refer to and mean cash, cash equivalents, bank deposits, and negotiable instruments.

1.14    "Chapter 11" shall mean Chapter 11 of the Code, 11 U.S.C. Section 1101-46.

4

1.15  "Claim" will refer to and mean every right and remedy encompassed within the statutory definition set forth in Bankruptcy Code §101(4), 11 U.S.C. §101(4), whether or not such claim is asserted.

1.16  "Class" will refer to and mean each of the categories of claims and interests described in Article II of this Plan.

1.17  "Confirmation Date" will refer to and mean the date on which the Bankruptcy Court enters the Confirmation Order confirming this Plan.

1.18  "Confirmation Hearing" will refer to and mean the hearing regarding the confirmation of this Plan conducted pursuant to Bankruptcy Code §1128, as adjourned or continued to from time to time.

1.19  "Confirmation Order" will refer to and mean the order confirming this Plan pursuant to Bankruptcy Code §1129.

1.20  "Court" shall mean the United States Bankruptcy Court for the District of Arizona, Tucson Division.

1.21  "Creditor" will refer to and mean every holder of a claim whether or not such claim is an allowed claim, encompassed within the statutory definition set forth in Bankruptcy Code §101(9), 11 U.S.C. §101(9).

1.22  "Debtor" will refer to and mean Tucson One, LLC, an Arizona limited liability company, in its capacities as the Debtor and/or the Debtor in Possession, as the case may be, in this reorganization case.

1.23  "Deficiency Claim" shall mean an allowed claim of a creditor, if any, equal to the amount by which the aggregate allowed claims of such creditor exceed the sum of (a) any setoff rights of the creditor permitted under §553 of the Bankruptcy Code

5

rights of the creditor permitted under §553 of the Bankruptcy Code plus (b) the secured claim of such creditor; provided however, that if the holder of a secured claim of the class of which such claim is a member makes the election provided in §1111(b)(2) of the Bankruptcy Code, there shall be no deficiency claim in respect of such claim.

1.24 "<u>Disclosure Statement</u>" will refer to and mean the written statement describing this Plan which is prepared by the Debtor and distributed in accordance with Bankruptcy Code §§1125, 1126(b), and 1145 and Bankruptcy Rule 3018, as amended, in its present form or as the same may be altered, amended, or modified by the Debtor.

1.25 "<u>Disputed Claim or Disputed Interests</u>" will refer to and mean every claim; (a) that is scheduled by the Debtor as disputed, contingent or unliquidated; or (b) proof of which has been filed with the Bankruptcy Court and an objection to the allowance thereof, in whole or in part, has been interposed prior to the final date provided under this Plan for the filing of such objections or such other time as provided by the Bankruptcy Court and which objection has not been withdrawn, settled or determined by the final order.

1.26 "<u>Effective Date</u>" shall mean the later of (a) the first business day following the 10th day after entry of the Court of an order confirming this Plan, or (b) the first business day after such order has become final and unappealable; provided however, no appeal of said order is pending; provided further, the Debtor may waive the condition that no appeal of the order of confirmation be pending by a writing duly executed by the Debtor and filed with the Court on or before the date which but for the pendency of appeal would become the effective date of the Plan, and in the event that said condition is timely waived by the Debtor, the Plan shall become effective as provided herein

6

notwithstanding the pendency on said date of an appeal or appeals; in the event that said condition is not timely waived, the Plan shall become effective on the first business day after an appeal is no longer pending.

1.27  "Estate" will refer to and mean the bankruptcy estate of the Debtor created in the reorganization case under the Bankruptcy Code.

1.28  "Equity Contribution" means that money from a party retaining or purchasing by cash or otherwise, an equity interest in the Debtor.

1.29  "Final Order" shall mean an order of judgment of the Bankruptcy Court which (a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or rehearing or certiorari is pending; or (b) if appealed from, shall have been affirmed and no further hearing, appeal or petition for certiorari can be taken or granted, or as to which no stay has been entered to affect the operative provisions of such order of judgment.

1.30  "Insider" shall refer to and mean all persons who qualify as an "insider" pursuant to 11 U.S.C. §101(31).

1.31  "Interest" shall mean any equity interest in the Debtor as of the petition date.

1.32  "Interest Holder(s)" shall mean any person or persons owning an equity interest in the Debtor as of the Effective Date.

1.33  "Participating Investors" if any, shall mean those investors who make capital contributions to the Reorganized Debtor in exchange for an interest in the Reorganized Debtor or who otherwise participate in the reorganization of the Debtor

7

through the lending funds or other items of money or money's worth for or in aid of the reorganization.

1.34 "Person" will refer to and mean any individual, corporation, limited or general partnership, joint venture, association, joint stock company, trust, unincorporated organization, or government or any agency or political subdivision thereof.

1.35 "Petition Date" shall mean the date that the Debtor filed the voluntary petition under Chapter 11 of the Bankruptcy Code with this Court.

1.36 "Plan" shall mean this Plan of Reorganization as set forth herein, in its entirety, and all addenda, exhibits, schedules, releases, and other attachments thereto as may be amended or supplemented from time to time.

1.37 "Preference Recovery Amounts" shall mean all sums collected as preferences under §547 of the Code and as set-offs under §553 of the Code.

1.38 "Proceeds from Sale or Refinancing" shall mean all cash and other consideration received by the Debtor arising from the sale or refinancing of the Debtor's property, less the costs of such sale or refinancing, the amount of cash disbursed or to be disbursed in connection with such sale or refinancing (which shall include, cash disbursed or to be disbursed in the discretion of the Debtor in connection with repairs, replacement, etc. of the affected property); the amount necessary for the payment of all debts and obligations of the Debtor related to the particular sale or refinancing, excluding the payment of principal and/or interest due on unsecured promissory notes, and the amount considered appropriate by the Debtor to provide adequate reserves.

1.39 "Professional Persons" means persons retained or to be compensated

8

pursuant to §§327, 328, 330 and 503(b) of the Code.

1.40  "Th_e Property" means the real property located at 3700 E. Ft. Lowell Road, Tucson, Arizona.

1.41  "Proponent" shall mean the Debtor.

1.42  "Secured Claim" shall mean (a) a claim secured by a lien on property of the Debtor, which lien is valid, perfected and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or other applicable non-bankruptcy law, and which is duly established in this reorganization case, but only to the extent that such claim does not exceed the value of such the estate's interest in the assets which the Bankruptcy Court finds are valid security for such claim (except, if the class of which such claim is a part makes the election provided in §1111(b)(2) of the Bankruptcy Code, the entire amount of the claim shall be a secured claim and (b) a claim allowed under the Plan as a secured claim.

1.43  "Secured Creditors" means persons holding allowed secured claims within the meaning of §506 of the Code.

1.44  "Tax Claims" shall mean the claims of any person for the payment of taxes (a) accorded a priority pursuant to §§507(a)(1) and (7) of the Bankruptcy Code, but excluding all claims for post-petition interest and pre-petition and post-petition penalties, all of which interest and penalties shall be deemed disallowed and discharged on the Effective Date.

1.45  "Taxing Authorities" shall mean any legal entity with authority to levy and collect taxes pursuant to federal, state or local statutes or ordinances.

1.46  "Unsecured Claims" shall mean all claims held by creditors of the Debtor,

including deficiency claims, dissolution claims and claims arising out of the rejection of executory contracts, other than secured claims, administrative claims and tax claims.

1.47  "Unsecured Creditors" shall mean persons holding allowed unsecured claims against the Debtor for which there are no assets of the Debtor serving as security (excluding undersecured mortgage deficiency creditors), but not including priority claims.

All terms not specifically defined by this Plan shall have the meaning designated in the Bankruptcy Code, or if not defined therein, their ordinary meanings.

## *ARTICLE II*

### *General Terms and Conditions*

2.1  Class of Claims and Payment: Various classes of claims and interests are defined in this Plan.  This Plan is intended to deal with all claims against the estate of the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to §502(h) of the Code.  However, only those claims allowed pursuant to §502(a) of the Code will receive payment under this Plan.

2.2  Preserved Liens: To the extent required under §1124(2) of the Code, to preserve the rights of a creditor having a secured claim addressed pursuant to that Section, the lien or encumbrance of that creditor shall, to the extent valid, be preserved.

2.3  Time for Filing of Claims: The list of creditors filed in these proceedings by the Debtor shall constitute the filing of a claim by each creditor which is not listed as disputed, contingent or unliquidated as to amount.  The Debtor reserves the right to object to any such claim where it appears that the amount scheduled by the Debtor is improper or where there is some dispute with regard to that claim.  All other creditors, or

10

creditors who disagree with the amounts as scheduled by the Debtor must file prior to the date set for the hearing on the Disclosure Statement, a proof of claim or proof of interest.  Failure to timely file a proof of claim or file a proof of interest, if not listed on the Debtor's schedules as non-contingent, liquidated and undisputed, will result in a disallowance of the proof of claim or proof of interest.

## *ARTICLE III*

### *Classification and Treatment of Claims and Interests*

**Claim Amounts:**   Because of certain claims against the Debtor that may be unknown or of undetermined amounts, the amounts of claims specified in this Plan reflect only the Debtor's best estimate at this time of the amount due.  In addition, the amounts of the claims specified in this Plan do not include, for example, claims arising from the rejection of certain executory contracts and other contingent or unliquidated claims arising against Debtor, if any.

**Classification:**   The Plan divides claims against the Debtor into multiple separate classes that the Debtor asserts are in accordance with the Bankruptcy Code. Unless otherwise expressly stated in the Plan, distributions to holders of allowed claims are in full satisfaction of their allowed claims.  All claims against the Debtor arising prior to confirmation will be discharged by performance of the Plan on the Effective Date to the extent that such claims are dischargeable under Bankruptcy Code Section 1141(d). For the purposes of the Plan, claims are classified and treated as follows:

**3.1**   **Class One – Administrative Claims:**

A. <u>Classification</u>:   Class One consists of all claims for the cost of administration of the Debtor's bankruptcy estate. Included in this class are all claims for

11

administrative expenses entitled to priority under Bankruptcy Code §507(A)(1), such as professional fees and costs, as approved by the Bankruptcy Court of the attorneys, accountants, and other professional persons employed by the Debtor, and all actual and necessary expenses of operating the Debtor's business pursuant to Bankruptcy Code §503(b), including without limitation, all fees charged against the Debtor's business pursuant to Chapter 123 of Title 28, United States Code. Debtor believes claims in this class will exceed $20,000.00.

        B. <u>Impairment</u>:   Class One is not impaired.

        C. <u>Treatment</u>:    The Plan provides for the payment in cash, in full, of all Allowed Administrative Claims on the later of the Effective Date or the date upon which such Claims become Allowed Claims, or as otherwise ordered by the Bankruptcy Court or agreed to by Claimant and Debtor. Class 1 claims will be paid from assets of the estate. The Debtor currently estimates that the Class 1 claims will exceed $20,000.00 and may include post-petition administrative expenses. Such payments will reduce the amount of administrative expenses due on the Effective Date of the Plan unless otherwise provided.

        **THIS CLASS DOES NOT VOTE.**

        **3.2**    **Class Two – Priority Claims of Governmental Units**

        A. <u>Classification</u>:  Class Two claims consists of all allowed claims of the United States Internal Revenue Service ("IRS") and/or State of Arizona, Department of Revenue ("DOR") and/or the Department of Economic Security ("DES"), City of Tucson or other government agencies which are entitled to priority pursuant to Section

507(a)(8) of the Bankruptcy Code except ad valorem taxes. **Debtor is not aware of any claims.**

B. Impairment: Class Two is impaired.

C. Treatment: Each holder of a Class Two allowed claim shall retain its lien or claim, in accordance with Section 1129 of the Bankruptcy Code. The claim shall bear simple interest at a fixed rate equal to that rate which would be required to be paid as of the Effective Date under Section 6621 and/or 6622 of the Internal Revenue Code, or such other interest rate as the Bankruptcy Court determines is sufficient to confer upon the tax claim a value as of the Effective Date equal to the principal amount of such claim. The allowed claim shall be payable in 60 equal monthly installments of principal, along with accrued interest, in deferred cash payments over a period not to exceed five years from date of petition. The first payment shall commence on the first day of the month immediately following the month of the Effective Date. The claim is subject to prepayment at any time without penalty or premium and shall have such other terms as are usual and customary.

### 3.3     Class Three - Secured Ad Valorem Real Property Tax Claims

A. Classification: Class Three shall consist of all allowed ad valorem real or personal property tax claims of local taxing authorities as of the date of the confirmation which are secured by liens or inchoate lien rights on the Debtor's real property. The Debtor believes the Class Three claimant (Pima County Treasurer) will assert a claim in the amount of approximately $43,000.00.

B. Impairment: Class Three is impaired.

13

C. <u>Treatment</u>: On the Effective Date, each holder of a Class Three Claim (the Pima County Treasurer's claim) will be allowed in the principal amount due, with interest at the statutory rate, plus penalties (if any). Debtor proposes to pay in full all outstanding taxes and interest, consistent with the provisions of 11 U.S.C. § 1129(a)(9)(C)(ii) and (D), or will pay Pima County Treasurer in full in the event Debtor is able to sell the Property. Debtor will pay Pima County Treasurer, in regular installments, with interest, over 60 month, until Pima County's claim is paid in full, on or before September 22, 2021. Pima County retains its liens.

**3.4    Class Four – Secured Claim by U.S. Bank.**

A. <u>Classification</u>: Class Four consists of the allowed secured claim of U.S. Bank as Trustee and Successor-In-Interest to Bank of America ("Secured Lender" herein). This claim is evidenced by a promissory note and first position deed of trust secured against the Property, including the top 10% carve-out guaranty of Henry A. Goldman. U.S. Bank has filed a proof of claim in the amount of $2,666,462.91. Debtor believes this claim is not fully secured.

Debtor has moved for a valuation hearing concerning the Property based on its own appraisal, which resulted in an "as is" market value of $850,000.

B. <u>Impairment</u>: Class Four is impaired.

C. <u>Treatment</u>:

IN THE EVENT THE DEBTOR IS ABLE TO REACH A STIPULATION WITH SECURED LENDER AS TO ITS TREATMENT, THE TERMS AND CONDITIONS THEREIN WILL SUPERSEDE THAT TREATMENT SET FORTH HEREIN.

14

Under § 506 of the Bankruptcy Code, a secured creditor has a secured claim to the extent of the creditor's interest in the Debtor's interest in the collateral and an unsecured claim for the balance, if any, unless the creditor makes an 1111(b) election, and, if eligible, elects to have its claim treated as fully secured.

The Debtor's Plan proposes to limit the Class 4 Creditor's first position secured claim to $850,000, and to treat the balance of its claim, if any, as an unsecured deficiency claim and pay it as a Class 5 creditor. If the Debtor and the Creditor cannot agree as to the amount of the Class 4 Creditor's allowed first position secured claim, the Court may be called upon to make that determination.

The allowed claim of the Class 4 Creditor shall be paid in two parts, assuming no 1111(b) election is made by Creditor, and secured by a first lien mortgage evidenced by a promissory note and deed of trust, modified as follows:

1. Should the Class 4 secured claim be reduced to the fair market value of the Property, Debtor proposes to amortize the $850,000 over 30 years at the prime interest rate per annum (as of the Effective date, estimated at 4.75%), and make interest-only monthly payments for five years. The maturity date of the modified / reduced first position Secured Loan shall be extended to five years after the Effective Date, subject to an additional five-year extension.

2. The note of the Class 4 creditor shall continue to be secured by its first position deed of trust on the Property. Secured Lender's current 10% carve-out guaranty for Henry A. Goldman shall be maintained as to the unsecured deficiency portion of the bifurcated claim (See Class 5, below).

3.   When Debtor leases the Property, all cash flow will be used to make the scheduled monthly interest-only payments, taxes, insurance, and Property expenses. At the end of the five year extension term, Debtor will obtain an appraisal to see if it results in a value sufficient to pay off the modified First Position Note and Deed of Trust. If not, Debtor and Secured Lender agree to negotiate in good faith to work out the terms of an additional five-year extension.

4.   Any difference between the current market value and objection due to Secured Lender shall be treated as a Class 5 unsecured deficiency claim.

5.   The Debtor and the Class 4 Creditor shall agree to execute such modifications to the existing note and deed of trust as are reasonably necessary to reflect the provisions of the Plan treatment of this creditor.

6.   *If, and only if, the Class Four Creditor makes the election provided for in Bankruptcy Code § 1111(b)(2),* then the secured claim will be allowed in an amount equal to the amount owed under the mortgage notes as of the petition date, less any penalty claims as determined by the Court, and shall accrue interest from the Effective Date of the Plan at 3.5% interest per annum, or the rate of the existing note, whichever is less, and payable in equal monthly instalments of interest amortized over thirty (30) years, with the first monthly installment due thirty (30) days after the Effective Date and subsequent monthly installments due on the same day of each subsequent month.

**3.5   Class Five - Deficiency Claims**

A. Classification:  Class 5 consists of all deficiency claims against the Debtor, namely the unsecured balance of the bifurcated claim of U.S. Bank.  It will also maintain its top 10% guaranty of Henry A. Goldman. The legal basis and justification for this

classification separate from the general unsecured creditors is provided in In re Loop 76, 465 B.R. 525 (9th Cir. BAP 2012) .

        B.  Impairment:  Class 5 is Impaired.

        C.  Treatment:  On the Effective Date, Debtor shall remit to the Class 5 Creditor a one-time payment in the amount $50,000 to fully satisfy the Deficiency Claim. Upon payment of the $50,000, the Class 5 Creditor shall release the guaranty of Henry A. Goldman.

### 3.6    Class Six – Claims of General Unsecured Creditors

        A.  Classification:  Class 6 consists of the allowed general unsecured claims against Debtor.

        B.  Impairment:  Class 6 is Impaired.

        C.  Treatment:  Beginning 18-months after the Effective Date, Debtor proposes making monthly payments, with no interest, to its allowed general unsecured claims, paid equally, pro-rata, until the allowed claims are paid in full.

### 3.7    Class Seven – Insider Claims

        A. Classification: Class 7 shall consist of all Allowed Claims by Insiders for repayment of or repayment of indebtedness of any nature or category. Debtor owes Henry Goldman Investments a balance of $1,899,571.

        B. Impairment:  Class 7 is impaired.

        C. Treatment: Class 7 shall receive payment only after all Allowed Claims entitled to distribution are paid the Allowed Amount of their claims.

        **This class does not vote.**

### 3.8    Class Eight – Contingent, Unliquidated and Disputed Claims

17

A. Classification: Class Eight shall consist of contingent, disputed, and unliquidated claims. **Debtor is not aware of any such claims.**

B. Impairment: Class 8 is impaired.

C. Treatment: Class 8 creditors shall receive no distribution under the Plan.

**3.9** **Class Nine - Equity Interests of Debtor**

A. Classification: Class 9 consists of the interest of the Debtor.

B. Impairment: Class 9 is not impaired.

C. Treatment: The existing equity interests of the members of the Debtor shall be retain their interest in the Debtor to the extent that they contribute money or money's worth, including labor or contractor's skills to the Debtor, to facilitate the reorganization of the Debtor. **This class does not vote.**

## *ARTICLE IV*

*General Provisions*

4.1.    Notwithstanding any other provision of this Plan, each claim shall be paid only after it has been allowed in accordance with the Code.

4.2    At the option of the Debtor, this Plan may be withdrawn at any time prior to the Effective Date of the Plan.  Such option shall be exercised by the filing in the case of a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.  If such option is timely and properly exercised, the case shall continue and be administered as if the Plan has been withdrawn prior to the confirmation.

4.3    Pursuant to §1123(b)(3)(B) of the Code, the Debtor shall retain each and

18

every claim, demand or cause of action whatsoever, which the Debtor had or had power to assert immediately prior to confirmation of the Plan, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code or transfers avoidable by reason of §§ 544, 545, 548, 549 or 553(b) of the Code, and may commence or continue in any appropriate court or tribunal and suit or other proceeding for the enforcement of same. Upon approval of the Court, the right to commence and maintain such actions may be assigned to a special litigation Trustee who shall prosecute them in the name of the Estate or in the special litigation Trustee's own name, as is appropriate under the law and the particular circumstances.

# ARTICLE V

*Means for Execution of the Plan*

5.1    Continuation of the Debtor's Business: The Debtor, as reorganized, will retain all property of the estate, excepting any property which is to be sold or otherwise disposed of as provided for herein. The retained property shall be used and employed by the Debtor in the continuance of its business and shall be free of all claims and encumbrances, except as set forth in the Plan or the order confirming the Plan.

5.2    Raising Additional Capital: The Plan will be implemented by the Debtor's Principal's new capital contributions, and rental income from a new lease, or sale.

5.3    Operation of the Reorganized Debtor: The Reorganized Debtor will operate free of any court constraints and will be bound only by the terms of this Plan and/or the order confirming the Plan.

# ARTICLE VI

*Provisions for the Assumption or Rejection of
Executory Contracts and Unexpired Leases*

Pursuant to Section 365 of the Bankruptcy Code, the Debtor assumes all executory contracts and unexpired leases to which they are a party, including leases specifically provided prior to the hearing on the Disclosure Statement, if any.

## ARTICLE VII

*Retention of Jurisdiction*

The Bankruptcy Court will retain jurisdiction over this case for purposes of determining the allowance of claims or interests or obligations thereto and for any other purpose which is contemplated in the Plan or which will otherwise assist in the consummation of the Plan. The Court also will retain jurisdiction for purposes of determining the allowance of any payment of any other claims or administrative expenses. The Court shall retain jurisdiction for purposes of determining any dispute arising from the interpretation, implementation or consummation of the Plan. In addition, the Court shall retain jurisdiction for the following purposes:

a) the classification of any claim or interest, the determination of such objections as may be filed to claims, or interest, and the re-examination of the allowance of any claim or interest;

b) the correction of any defect, the curing of any omission, or the reconciliation of any inconsistency in the Plan or the order of confirmation as may be necessary to carry out the purposes and intent of this Plan;

c) to enforce and interpret the terms and conditions of this Plan;

d) entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations and terms of such

title, rights and powers as the Court may deem necessary;

e)      determination of any claims asserted by the Debtor against any other person or entity, including but not limited to any right of the Debtor to recover assets pursuant to the provisions of Title 11, if such claim is pursued in the Court prior to the closing of the case;

f)      determination of all questions and disputes concerning the sale, lease, encumbrance, or other transfer of the property of the Debtor; and

g)      entry of a final decree closing this case.

Notwithstanding anything to the contrary contained herein, the Debtor shall not be bound by estoppel, the principal of res judicata or collateral estoppel with respect to any term or provisions contained herein in the event the plan is not confirmed as set forth herein.

## *ARTICLE VIII*

*Modification of the Plan*

This Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11.  In this regard:

a)      in accordance with §1127(a) of the Bankruptcy Code and Chapter 11, 11 U.S.C. §1127(a), modification(s) of the Plan may be proposed in writing by the Debtor at any time before its confirmation, provided that the Plan, as thus modified meets the requirements of  §§1122 and 1123 of the Bankruptcy Code and Chapter 11, 11 U.S.C. §§1122 and 1123; and provided further that the circumstances then existing justify such modification(s), and the Bankruptcy Court confirms the Plan as thus modified, under §1129 of the Bankruptcy Code and Chapter 11, 11 U.S.C. §1129;

Case 4:17-bk-11219-BMW    Doc 65    Filed 06/08/18    Entered 06/08/18 14:03:32    Desc
Main Document    Page 21 of 24

b)　　any holder(s) of a claim or equity interest(s) that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Bankruptcy Court for doing so, such holder(s) changes its previous acceptance or rejection; and

c)　　every modification of the Plan will supersede the previous version(s) of the Plan as and whenever each such modification is effective provided in this Article.  When superseded, the previous version(s) of the Plans will be in the nature of a withdrawn or rejected settlement proposal(s), and will be null, void and unusable by the Debtor or any other party for any purpose(s) whatsoever with respect to any of the contents of such version(s) of the Plan.

# *ARTICLE IX*

*Miscellaneous Provisions*

9.1　　<u>Securities Law</u>: Any satisfaction or exchange provided to any creditor pursuant to this Plan which may be deemed to be a security is exempt from registration under certain state and federal securities laws pursuant to §1145 of the Code.  Absent registration or another exemption from the requirements of registration pursuant to the Securities Act of 1933, as amended, and any applicable state securities laws, the subsequent transfer of any such securities is not so exempt.

9.2　　<u>Title to Property</u>: Upon confirmation, all assets of the Estate will be vested in the Reorganized Debtor.

9.3　　<u>Curing of Defaults</u>: The confirmation of a plan shall result in the curing of any default to the holder of a claim or interest according to the terms and conditions of the Plan.

## ARTICLE X

### *Closing of the Case*

At such time as the case has been fully administered, that is, when all things requiring action by the Court have been done, and the Plan has been substantially consummated, this case shall be closed. To close the case the Debtor shall file an application for final decree showing that the case has been fully administered and that the Plan has been substantially consummated.

In the period after confirmation but before closing of the case, the Debtor may continue to avail itself of the services of professional persons whose employment was approved at or prior to confirmation in completing administration of the case and in the consummation and performance of the Plan, and, if necessary, with approval of the Court employ additional professional persons to render services in and in connection with this case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billings therefore to the Debtor which shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to reasonableness thereof, as set forth hereinbelow.

In its application for final decree, the Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, and with respect to which no prior allowance thereof has been made by the Court. At the hearing on the Debtor's application for final decree the Court shall consider and determine whether or not such payments shall be approved as reasonable.

23

Confirmation of this Plan shall, pursuant to §1141, shall constitute a discharge of any debt that arose prior to confirmation and any debt of any kind specified in Bankruptcy Code §502(g), (h) and (i), other than those liabilities expressly to be assumed hereby by the Reorganized Debtor.

DATED this 8th day of June, 2018.

**NEFF & BOYER, P.C.**

By: /s/ Jeffrey M. Neff, AZB# 5603
    Jeffrey M. Neff
    Amanda C. Fife
    *Attorneys for Debtor*

ORIGINAL of the foregoing electronically
Filed this 8th day of June, 2018, with:

Clerk, United States Bankruptcy Court
District of Arizona
38 South Scott Ave.
Tucson, Arizona 85701
CM/ECF

COPIES of the foregoing were
Served/Mailed on the 8th day of June, 2018
Via first-class, U.S. Mail, Email,
And/or Facsimile to all interested parties.

BY: Sherrie L. Standish